# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**DONJA MARIE BUNNELL**,

        Plaintiff,

    v.

**STATE OF OREGON GOVERNOR KATE BROWN, *et al*,**

        Defendants.

Case No. 3:17-cv-1786-SI

**OPINION AND ORDER**

**Michael H. Simon, District Judge.**

Plaintiff Donja Marie Bunnell ("Bunnell" or "Plaintiff") filed suit *pro se* against numerous state and local officials, including judges, and some private attorneys and other practitioners involved in family law or custody proceedings in Oregon. In Plaintiff's Amended Complaint, it appears that she alleges four claims: (1) one claim under Title II of the Americans with Disabilities Act ("ADA"); (2) one claim under Title III of the ADA; (3) one claim under the Rehabilitation Act; and (4) one claim for violations of her rights under Section 46 of the Oregon Constitution, which provides that equal rights shall not be denied by the state based on sex. Plaintiff does not specifically identify what claims are brought against which defendants.

Before the Court are motions to dismiss brought by Clackamas County and its officials (ECF 62), the Oregon State Bar and its former President (ECF 63), the Sandy Police Department and its former Police Chief (ECF 73), attorney Leonard Kovac[1] (ECF 74), attorney John C. Moore (ECF 87), the National Association of Family and Conciliation Courts ("AFCC") and its Executive Director (ECF 88), Dr. Paul Guastadisegni (ECF 93), the Oregon Chapter of the AFCC and its President (ECF 94), certain executive officials, judicial officers, and other instrumentalities of the State of Oregon (ECF 102), and Dr. Mona Ozaki (ECF 104). Also before the Court is the motion for summary judgment brought by Dr. Charlene Sabin (ECF 98). For the reasons that follow, these motions are granted.[2]

## STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In

---

[1] Plaintiff erroneously sued Mr. Kovac as "Leonard Kovak."

[2] The Court notes that there is no evidence in the record that defendants Johns S. Foote and Billie Bell have been served in this case, and they have not yet appeared. An affidavit of service has been filed for defendant Clackamas County Family Support Office (although the Court makes no finding regarding the sufficiency of service), but it has not yet appeared. Peter Salem, although not served, appeared and moves to dismiss based on lack of service.

The Court *sua sponte* applies its analyses below to the claims alleged against these defendants. A trial court may *sua sponte* dismiss claims under Federal Rule of Civil Procedure 12(b)(6), even shortly before trial. *See, e.g., Omac v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Moreover, a trial court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981).

evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

*Pro se* plaintiffs receive special dispensation. A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (citation and quotation marks omitted). But even a *pro se* plaintiff must offer

more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## B. Motion to Dismiss Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122,

1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## C.  Motion for Summary Judgment under Rule 56

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## D.  The *Rooker-Feldman* Doctrine

Pursuant to the *Rooker-Feldman*[3] doctrine, federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. The basic premise of that doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from

---

[3] The *Rooker–Feldman* doctrine takes its name from *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

the final judgment of a state court." *Noel v. Hall*, 341 F3d 1148, 1154 (9th Cir. 2003). Instead, the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. *Id.*; *see* 28 U.S.C. § 1257.

The scope of the *Rooker-Feldman* doctrine includes *de facto* appeals from a state court decision and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158. A claim is inextricably intertwined with a state court judgment if the federal claim can succeed only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling. *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029-30 (9th Cir. 2001) (citations omitted).

*Rooker-Feldman* bars a suit from going forward if: (a) the plaintiff in the federal suit lost in the state court proceeding; (b) the state court determination is at the core of the federal lawsuit; (c) the federal lawsuit seeks review and rejection of the state court verdict; and (d) the state court judgment was entered before commencement of the federal action. *McKithen v. Brown*, 481 F.3d 89, 97 (2nd Cir. 2007). A dismissal under this doctrine generally is without prejudice, although one from which the plaintiff will not be able to replead in this Court. *See White v. Dobrescu*, 651 F. App'x 701, 703 (9th Cir. 2016) ("Because we affirm the dismissal on the basis of the *Rooker-Feldman* doctrine, we treat the dismissal as one without prejudice."); *see also Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (dismissals for lack of subject matter jurisdiction should be without prejudice).

## BACKGROUND

Plaintiff alleges that she has the disability of complex post-traumatic stress disorder ("PTSD"), which she states is an "injury" and not a mental health disorder. She alleges that Defendants improperly regarded her as mentally ill and suffering from paranoid schizophrenia

and parental alienation syndrome ("PAS"). She further alleges that Defendants discriminated against Plaintiff because of this perceived disability and because of "sex based stereotypes" relating to her perceived mental impairments. She also alleges that Defendants refused to provide her with appropriate accommodations necessary to ensure that Plaintiff had full access to court proceedings to which she was a party and at which the custody of her children were at issue.

Much of Plaintiff's Amended Complaint discusses her efforts in state court to "vindicate her rights" and that the state court opinions "side step the law, ignore the legal issues [Plaintiff] raises and further ensure[] that plaintiff and those similarly situated will be met with continued domestic and family violence." Plaintiff asserts that she does not challenge any state court decision, but that she asks this Court to "review the unlawful practices in context of how those decisions were made." She also makes general allegations regarding harm to women at large from domestic violence.

From Plaintiff's allegations, in May 2007 she and her ex-husband dissolved their marriage and entered into, among other things, a parenting plan. In 2010 that plan was litigated in state court and modified. At that time, Plaintiff's ex-husband received custody of their children. Plaintiff does not agree with the outcome of the state court litigation and alleges that Defendants did not "abide" by the 2007 parenting contract and accepted testimony from "prejudicial witnesses." Plaintiff further alleges that another modification to her and her ex-husband's "contract" occurred in May 2011 relating to child support and alimony.

Plaintiff also alleges that the State of Oregon has a systemic practice of providing family law proceedings that discriminate against persons with "invisible disabilities," exploit such persons for financial gain, and select court appointees, vendors, and employees that are "not compliant" with the ADA. Plaintiff challenges in this lawsuit the state court's act of "opening

up" her "closed" case (and apparently others' as well), denying her right freely to contract her parenting agreement, allowing "bogus contempt filings," "enacting cruel and unusual punishment," and depriving mothers like her of their children as punishment.

Plaintiff makes numerous general and conclusory allegations regarding fatherhood in general, how fathers prefer to structure support payments, the earning potential of women versus men, and the preferential treatment given to fathers throughout the country by state and federal programs, funding, and courts. For example, Plaintiff alleges: "Fathers, lawyers, mental health practitioners, court appointees, and judges are the haves. Mothers and children are the have-nots." She then alleges that system only works for the "haves" by depleting all the resources from mothers. Plaintiff also asserts numerous legal conclusions, citing statutes and regulations, alleging their legal implications, and concluding that Defendants have violated them. The limited allegations specific to each defendant are discussed below, as needed.

Plaintiff notes that several other cases similar to hers have been filed around the country and asserts that she will seek to have her case certified for "multidistrict litigation" to join with those cases. The Court notes, however, that except for one of those cases that is pending before the undersigned judge and is early in the litigation process and another pending in the Northern District of California, all other cases identified by Plaintiff have been dismissed (most without leave to amend), either *sua sponte* by the courts in which they were pending or through granting motions filed by the defendants in those cases.

## DISCUSSION

Defendants bring their motions on various grounds, and many join in the arguments made by one another. They argue that Plaintiff fails to state a claim on which relief can be granted, that the Court lacks subject-matter jurisdiction because the case is barred by the *Rooker-Feldman* doctrine, that Plaintiff's claims are barred by the statute of limitations, that her claims fail to

comply with Rule 8 of the Federal Rules of Civil Procedure, that judicial and quasi-judicial immunity applies, that state sovereign immunity applies, and that Plaintiff lacks standing. The Court finds that Plaintiff's claims are time-barred, the *Rooker-Feldman* doctrine applies, Plaintiff's claims against judges are barred by absolute immunity, and Plaintiff's allegations fail to comply with Rule 8 and fail to state a claim against any defendant. Accordingly, this case is dismissed without leave to amend and the Court does not reach any of Defendants' remaining arguments.

**A. Statute of Limitations**

The ADA does not carry a limitations period. Instead, courts "borrow the statute of limitations applicable to the most analogous state-law claim, so long as it is not inconsistent with federal law or policy to do so." *Sharkey v. O'Neil*, 778 F.3d 767 (9th Cir. 2015) (quotation marks omitted). This Court recently concluded that the state-law claim most analogous to a claim of disability discrimination in public accommodations is a claim under Oregon Revised Statutes ("ORS") § 659A.142(4), and that such a claim is subject to a two-year statute of limitations as provided in ORS § 12.110. *See A.F. v. Starbucks Corp.*, 2018 WL 1161385, at *3 (D. Or. Mar. 5, 2018). Thus, Plaintiff's ADA claim carries a two-year statute of limitations.

The Rehabilitation Act similarly does not provide a statute of limitations. Courts in this district have applied Oregon's two-year statute of limitations in ORS 12.110 to Rehabilitation Act claims. *See id*. at *2; *Ramirez v. Parker*, 2014 WL 7187463, at* (D. Or. December 16, 2014).

Generally, "a statute of limitations period is triggered by the decision constituting the discriminatory act and not by the consequences of that act." *McCoy v. San Francisco*, 14 F.3d 28, 30 (9th Cir. 1994); *see also Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (noting in a discrimination case that "'the proper focus is upon the time of the *discriminatory*

*acts*, not upon the time at which the consequences of the acts became most painful.'" (emphasis in original) (quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (1979))). In her Amended Complaint, Plaintiff fails to allege any conduct by any defendant relating to Plaintiff after 2011. Thus, Plaintiff fails to allege conduct within two years of this initiation of this proceeding.

Plaintiff alleges Defendants engaged in improper conduct in 2010 and 2011 relating to the "reopening" and modification of Plaintiff's divorce and custody proceedings. Most of the conduct alleged by Plaintiff occurred in 2010, although Plaintiff alleges Defendant Judge Katherine Weber issued an order modifying Plaintiff's alimony and child support in 2011. There are no facts alleged that took place anywhere near on or after October 27, 2015, two years before the initiation of this lawsuit.

Plaintiff argues that her claims are subject to the continuing violations doctrine. This doctrine, however, requires additional *acts* of discrimination, not the suffering of alleged ongoing *effects* of alleged past acts of discrimination. *See Knox v. Davis*, 260 F.3d 1009, 1014-15 (9th Cir. 2001) (noting that "this court has repeatedly held that a mere continuing *impact* from past violations is not actionable" (emphasis in original)).

 Even a generous review of Plaintiff's allegations would be that she continues to suffer negative effects from the alleged discrimination by Defendants that occurred in 2010 and 2011. As explained by another court in a case alleging nearly identical claims to Plaintiff's (and one of the "in association with" cases Plaintiff noted in her Amended Complaint):

> While it appears that Plaintiffs attempt to establish ongoing harm or continuing violations of the ADA and Rehabilitation Act with these facts and thereby possibly circumvent the applicable two-year statute of limitations, the attempt falls short. Even assuming these allegations are true, they do not allege that Plaintiffs, as presumably qualified individuals, are being "excluded from participation in or be[ing] denied the benefits of the services, programs, or activities of a public entity, or be[ing] subjected to

discrimination by any such entity[,]" as protected by Title II of the ADA. *See* 42 U.S.C. § 12132. Nor do the allegations show that Plaintiffs, as presumably qualified individuals, are being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance[,]" as protected by the Rehabilitation Act. *See* 29 U.S.C. § 794(a). Instead, the allegations, at their core, pertain to the *effects* of the actions or inactions by Defendants that occurred during the state-court divorce proceeding. Unfortunately for Plaintiffs, those effects are not themselves separate violations of the ADA or the Rehabilitation Act, and, therefore, do not reset the clock as actionable violations of either Act. *See generally Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 1980) (indicating, in the employment context, that a continuing violation of the ADA must consist of more than merely the lasting effect of a past act); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 560 (1977) (same); *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (1979) (noting that, in a Title VII discrimination case, "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful") (emphasis added); *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) (when a violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful *conduct* ceases); *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("The critical distinction in continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one[-]time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does."); *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 855 (5th Cir. 1993) (recognizing that "[a] plaintiff cannot use the continuing violation theory to resurrect claims about discrimination . . . concluded in the past, even though its effects persist"). Accordingly, despite Plaintiffs' possible attempt to circumvent the statute of limitations by alleging ongoing harm or continuing violations of the Acts, equitable tolling does not apply to their claims, making them time-barred.

*Mitchell v. Alabama*, 2018 WL 2107218, at *3 (M.D. Ala. Apr. 10, 2018), *report and recommendation adopted*, 2018 WL 2107219 (M.D. Ala. May 7, 2018) (alterations and emphasis in original).

Accordingly, Plaintiff's claims are time-barred. *Id.*; *see also Wolf v. New Jersey*, 2018 WL 1942522, at *6 (D.N.J. Apr. 23, 2018) (dismissing with prejudice claims similar to

Plaintiff's as time-barred because the alleged underlying state court proceedings giving rise to the claims occurred more than two years before the filing of the federal law suit). Because Plaintiff's claims are time-barred, this case is dismissed without leave to amend.

## B. The *Rooker-Feldman* Doctrine

Despite Plaintiff's repeated allegation that she is not challenging a state court opinion, under the *Rooker-Feldman* doctrine, a *de facto* challenge to state court decisions, or federal cases raising issues that are "inextricably intertwined" with an issue raised in state court, are also prohibited. *Noel*, 3341 F.3d at 1158. The four factors to consider in applying the *Rooker-Feldman* doctrine are met in this case.

For the first and fourth factors, Plaintiff lost in the state court proceeding and the state court judgment preceded this action. For the second factor, the state court's determination is at the core of this action—Plaintiff's allegations against Defendants focus exclusively on conduct relating to Plaintiff's custody and divorce state court litigation. Finally, for the third factor, although Plaintiff asserts that she is not seeking review or rejection of the state court verdict, Plaintiff's allegations make clear that the gravamen of her challenge is that the state court improperly reopened her divorce and custody proceeding, required her and her children to consult with court-appointed practitioners, and modified her custody and support agreement in a manner with which Plaintiff disagrees. Thus, for Plaintiff to prevail in this case, the Court necessarily would have to determine that the state court wrongly decided these issues. That is not the role of federal courts. To the extent Plaintiff was displeased with the state court actions and decisions, she needed to appeal those decisions in state court. Accordingly, under the *Rooker-Feldman* doctrine, the Court does not have jurisdiction to consider Plaintiff's claims. *See, e.g.*, *Skipp v. Brigham*, 2017 WL 4870907, at *5 (D. Conn. Oct. 26, 2017) (finding that the *Rooker-Feldman* doctrine applies to similar claims alleging ADA and Rehabilitation Act violations and

discrimination by state court officials and other parties related to custody and divorce proceedings); *Wolf v. Escala*, 2015 WL 2403106, at*8-10 (D. N.J. May 20, 2015) (same). Because the Court does not have jurisdiction, this case is dismissed without leave to amend.

## C. Judicial Immunity

Judges are absolutely immune from liability for damages, certain injunctive relief,[4] and declaratory relief sought as a result of judicial acts performed in their judicial capacity. *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir. 1996) (superseded by statute on other grounds); *Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also Craig v. Villicana*, 676 F. App'x 716 (9th Cir. 2017). To qualify for judicial immunity, a judge must have performed "judicial acts" within the scope of his or her jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). "An act is judicial in nature if it is a function normally performed by a judge and the parties to the act were dealing with the judge in his judicial capacity." *McGuire v. Clackamas Cty. Counsel*, 2009 WL 4456310, at *4 (D. Or. Nov. 24, 2009) (citing *Stump*, 435 U.S. at 362). Judges "enjoy absolute immunity even when their actions are erroneous, malicious, or in excess of judicial authority." *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). The only factual allegations Plaintiff asserts relating to the defendant judges involve specific judicial orders made within the scope of their jurisdiction. Thus the defendant judges are entitled to absolute judicial immunity and claims against them are dismissed with prejudice. *See Skipp*, 2017 WL 4870907, at *7 (applying judicial immunity to similar claims).

## D. Sufficiency of Plaintiff's Allegations

Although Plaintiff's Amended Complaint is lengthy, it fails to comply with Rule 8 of the Federal Rules of Civil Procedure or state *factual* allegations sufficient to a state claim against

---

[4] The Court notes that "judicial immunity is not a bar to prospective injunctive relief." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).

any defendant. Plaintiff's Amended Complaint is replete with conclusory statements that the Court does not accept as true, general and conclusory allegations relating to men, women, fathers, mothers, and institutions at large that are irrelevant to Plaintiff's purported claims or alleged injury, and legal conclusions that the Court disregards. The factual allegations relating to the alleged conduct of Defendants are quite minimal.[5]

Plaintiff brings claims under Titles II and III of the ADA, the Rehabilitation Act, and Section 46 of the Oregon Constitution. To prevail under Title II of the ADA, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of her disability. *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014).

"To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

---

[5] The majority of Plaintiff's Amended Complaint appears to be a copy of the complaints filed in the cases Plaintiff recites as "similarly situated to" and "in association with" her case. These cases have uniformly been dismissed when considered by the courts in which they were filed. *See, e.g.*, *Mitchell*, 2018 WL 2107218, at *3 (dismissing claims *sua sponte*); *Boyer v. Becerra*, 2018 WL 2041995, at *8 (N.D. Cal. Apr. 30, 2018) (dismissing claims *sua sponte* without leave to amend); *Wolf*, 2018 WL 1942522, at *7 (dismissing claims with prejudice); *Barnett v. Becerra*, 2018 WL 1070820, at *7 (N.D. Cal. Feb. 26, 2018) (dismissing claims *sua sponte* without leave to amend); *Theill v. Oregon*, Case No. 17-1722-SB, Findings and Recommendation ECF No. 7 (D. Or. January 2, 2018) (recommending dismissal of claims *sua sponte* with leave to amend); *James v. Massachusetts*, 2018 WL 326457, at *3-4 (D. Mass. Jan. 8, 2018) (identifying deficiencies in the complaint and ordering the plaintiff to show cause why the case should not be dismissed), *complaint dismissed in* 2018 WL 1156228 (D. Mass. Mar. 5, 2018); *Skipp v. Brigham*, 2017 WL 4870907, at *7 (dismissing claims and noting that if the plaintiff files anything more with the court other than an appeal the plaintiff will be designated as a vexatious litigant).

accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). An attorney's office and social service center are considered places of public accommodation. 42 U.S.C. § 12181(7)(F), (K).

A *prima facie* claim under Section 504 of the Rehabilitation Act requires a plaintiff to allege the following four elements: (1) that she is disabled under the Act; (2) that she is "otherwise qualified" for the benefit or services sought, meaning that she could "meet the essential eligibility requirements of such services, with or without reasonable accommodation"; (3) that she was denied the services because of her disability; and (4) that the program or activity in question receives federal financial assistance. *Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1047 (9th Cir. 2009).

### 1. Clackamas County Defendants

Title III of the ADA does not apply to governmental entities, so Plaintiff fails to state a claim for her Title III claim against the Clackamas County Defendants. Regarding Plaintiff's remaining claim, she fails to assert any facts against Sheriff Roberts or the Sheriff's Office. She generally alleges that the Sheriff and other employees of the Sheriff's Office were not properly trained in civil rights, gender bias, or Title II and that she was "stripped of her rights" when dealing with the Sheriff's office. She makes no factual allegations, however, of "dealing" with the Sheriff's office. Her allegations involve court proceedings. She also asserts no factual allegations relating to Clackamas County or Stephen Madkour of the Office of County Counsel. Accordingly, she fails to state a claim against any of these defendants relating to her ADA Title II claim, Rehabilitation Act claim, or claim under the Oregon Constitution.

### 2. Oregon State Bar Defendants

Plaintiff asserts no factual allegations relating to her claims involving the Oregon State Bar or its former President Mr. Heysell. She does not allege that she contacted the Bar, sought

services from the Bar, was somehow precluded from obtaining services due to her perceived or actual disability, or was discriminated against by the Bar. Her only allegations relating to the Bar or its former President is a conclusory allegation that the Bar is not compliant with the ADA, which the Court disregards, and allegations that the Bar is a public entity, it promotes respect for the rule of law, and it "oversee[s] the role of thousands of attorneys admitted to practice in Oregon." These allegations are insufficient to state a claim against the Bar or its former President.

### 3. Sandy Police Defendants

Similar to the Clackamas County Sheriff's Office, Plaintiff does not plead factual allegations involving the Sandy Police Department or its former Police Chief. Plaintiff does not allege facts showing how she sought services from the Sandy Police Department, how she was deprived services due to her perceived or actual disability, or was otherwise discriminated against by the Sandy Police Department. Plaintiff alleges that the Sandy Police Department is a private entity under the ADA, which is incorrect. Thus the Title III claims are dismissed.

The only other allegations relating to the Sandy Police Department are the same conclusory allegations that Plaintiff made relating to the Clackamas County Sheriff's Office— that the Sandy Police Department is insufficiently trained in civil rights, gender bias, and Title II of the ADA, and that she was stripped of rights when interacting with the Sandy Police Department. Accordingly, Plaintiff fails to state a claim against the Sandy Police Department or its former Police Chief.

### 4. Leonard Kovac

Leonard Kovac is an attorney who at one point briefly represented Plaintiff during her divorce or custody dispute. Plaintiff alleges that he is both a public entity and a private entity under the ADA, which is incorrect. A public entity under the ADA is a state or local government,

or a "department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). As a private attorney who Plaintiff alleges represented her individually, Plaintiff has not alleged facts demonstrating that Mr. Kovac is an instrumentality of the State. Thus, Mr. Kovac is not a public entity. Accordingly Plaintiff fails to state a claim against him under Title II of the ADA or Section 46 of the Oregon Constitution.

The only other allegations involving Mr. Kovac is that he ceased his representation of Plaintiff via a letter and did not notify the State court, and that he failed timely to provide Plaintiff with a notice regarding a court proceeding because he was not happy with Plaintiff. This is insufficient to support any of Plaintiff's claims. It does not support disability discrimination under Title III of the ADA or the Rehabilitation Act. Indeed, Plaintiff alleges that Mr. Kovac was unhappy with her, not that he ceased being her attorney because of her perceived or actual disability. Nor does this allegation support Plaintiff's claim of unequal treatment under the Oregon Constitution.

### 5. John C. Moore

John C. Moore is an attorney who briefly represented Plaintiff's ex-husband during the domestic dispute. Plaintiff alleges Mr. Moore is both a public and private entity under the ADA. As with Mr. Kovac, Plaintiff fails to allege facts demonstrating that Mr. Moore is an instrumentality of the state and thus Plaintiff's Title II claim under the ADA and Section 46 claim under the Oregon Constitution against Mr. Moore are dismissed.

Plaintiff's remaining allegations relate to Mr. Moore's representation of his client—that Mr. Moore sent letters on behalf of his client, obtained extensions of time from the court, made representations to the state court to which Plaintiff disagrees, "forced" her into a custody modification proceeding through court filings, "lied" about the situation with her ex-husband,

required her to go to court numerous times for frivolous reasons, intimidated a witness, and faxed her private information to her job on when he knew she was out of the office.

Although Plaintiff is displeased with Mr. Moore's representation of his client, Plaintiff does not allege that Mr. Moore denied Plaintiff the public accommodation of his law office on the basis of Plaintiff's perceived or actual disability. Accordingly, Plaintiff's claim under Title III of the ADA is dismissed. Similarly, Plaintiff does not allege that she sought any services from Mr. Moore that she was precluded from obtaining by Mr. Moore because of Plaintiff's disability. Thus, her Rehabilitation Act claim is dismissed.

### 6.  National and Oregon AFCC Defendants

Plaintiff alleges that the AFCC Defendants are private entities, thus Plaintiff's claims under Title II of the ADA and Section 46 of the Oregon Constitution are dismissed against all the AFCC Defendants. Plaintiff's factual allegations relating to the AFCC Defendants are that they do not "abide" by the contracts entered into by others, they promote the use of PAS and other mental health accusations against mothers and children in family court, and they create, sell, implement, and train programs that violate the ADA. These are general and conclusory allegations that do not support that, because of Plaintiff's disability, the AFCC denied Plaintiff a public accommodation that the AFCC Defendants rent, own, or lease. Thus Plaintiff fails to state a Title III claim against these defendants. Plaintiff similarly fails to state a Rehabilitation Act claim against these defendants, because she does not allege that she sought services from the AFCC Defendants or was denied services by the AFCC Defendants because of her disability.

### 7.  Dr. Paul Guastadisegni

Plaintiff alleges that Dr. Guastadisegni is an "independent mental health provider" who was worked as a "parent evaluator" during the relevant time period and was both a public entity and a private entity for purposes of the ADA. Plaintiff alleges that Judge Villa ordered Plaintiff

and her children to a custody evaluation with Dr. Guastadisegni. Plaintiff further alleges that

Dr. Guastadisegni "grilled" Plaintiff, "interviewed" her children, concluded that Plaintiff needed

to put the abuse "behind her," and further concluded that there was emotional abuse against

Plaintiff by her ex-husband but no physical abuse. Plaintiff alleges that this conclusion was based

on Dr. Guastadisegni's erroneous belief that Plaintiff had crossed-out physical abuse on one of

the forms she completed, when in fact she had never crossed anything out. She alleges that Dr.

Guastadisegni stated in his report that the children were closer to Plaintiff than her ex-husband,

that Plaintiff was more truthful on the testing than was her ex-husband, that his report was only

accurate if both sides were telling the truth, and that Plaintiff followed the parenting plan too

closely. She also alleges that Dr. Guastadisegni gave Plaintiff his final report on the morning of

the court hearing.

These allegations do not support any claim of disability discrimination or gender

discrimination. Plaintiff does not allege that Dr. Guastadisegni denied her services or a public

accommodation in his offices because of Plaintiff's disability. To the contrary, Plaintiff received

services from Dr. Guastadisegni and as alleged by Plaintiff the report was more favorable to her

than to her ex-husband. The only aspect of the report that Plaintiff disputes is that there was no

physical abuse. Plaintiff alleges, however, that specific conclusion was based on

Dr. Guastadisegni's mistaken belief that Plaintiff had crossed-out physical abuse on her form,

not based on Plaintiff's disability. Accordingly, Plaintiff fails to state a claim against

Dr. Guastadisegni.

### 8. State of Oregon Defendants

As discussed above, the judge defendants have absolute judicial immunity. The

remaining State of Oregon Defendants are officials and agencies against whom no specific

factual allegations are asserted that support any of Plaintiff's claims. Thus the claims against these defendants are dismissed.

### 9. Dr. Mona Ozaki

The entirety of Plaintiff's allegations against Dr. Ozaki are that she is "is an independent mental health provider licensed by the State of Oregon and worked as a psychologist at the time of the events complained herein" and that she was both a public entity and a private entity for purposes of the ADA. There are no factual allegations relating to Plaintiff's claims. Accordingly, Plaintiff fails to state a claim against Dr. Ozaki.

## E. Motion for Summary Judgment on Claims Against Dr. Charlene Sabin

Dr. Sabin moves for summary judgment on all claims. Dr. Sabin asserts that she is a private entity who does not receive federal funds, and thus claims under Title II of the ADA, the Rehabilitation Act, and Section 46 of the Oregon Constitution must be dismissed. Dr. Sabin, however, did not provide any evidence (such as a declaration) relating to her private status or that she does not receive federal funds. Under Rule 56 of the Federal Rules of Civil Procedure, a party asserting that a fact cannot be genuinely disputed "*must* support the assertion by" citing to the record, including declarations or affidavits. Fed. R. Civ. 56(c)(1) (emphasis added). It is the moving party's initial burden to establish the absence of a genuine dispute of material fact, and only then does the responding party need to present evidence that there is a genuine dispute. *Celotex*, 477 U.S. at 323. Dr. Sabin merely argued in her brief that Plaintiff could not "prove" that Dr. Sabin received federal funds. This is insufficient to meet Dr. Sabin's burden at summary judgment to show that there is no dispute of material fact on this issue.

Dr. Sabin, however, also raises arguments relating to the statute of limitations and the *Rooker-Feldman* doctrine. As discussed above, the Court grants the motion on these grounds. The Court also applies to the claims against Dr. Sabin the Court's reasoning discussed above in

resolving the other defendants' motions under Rule 12(b)(6). As with all of the defendants

discussed above, Plaintiff fails to allege facts supporting that Dr. Sabin either denied Plaintiff

benefits or services or otherwise discriminated against Plaintiff based on her disability, denied

Plaintiff public accommodation in space rented, owned, or leased by Dr. Sabin, or was an

instrumentality of the State who discriminated against Plaintiff on the basis of gender.

## CONCLUSION

Defendants' motions (ECF 62, 63, 73, 74, 87, 88, 93, 94, 98, 102, 104) are GRANTED.

The Court also *sua sponte* dismisses all claims against all nonmoving defendants. Plaintiff's

Amended Complaint is dismissed without leave to amend.

**IT IS SO ORDERED**.

DATED this 19th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge